UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. BRENDA JEAN ANDERSEN-SWIDERSKI, individually,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, a California partnership; and KAISER PERMANENTE SOUTHERN CALIFORNIA OPTOMETRIC ASSOCIATION, an unincorporated association; and DOES 1-10.,<br><br>Defendants. | Case No.: 18-cv-1219-WQH-AGS<br><br>**ORDER** |

HAYES, Judge:

The motion before the court is the Motion for Summary Judgment filed by Plaintiff Dr. Brenda Jean Andersen-Swiderski. (ECF No. 18).

## BACKGROUND

On June 11, 2018, Plaintiff Dr. Brenda Jean Andersen-Swiderski initiated this action against Defendants Southern California Permanente Medical Group (Kaiser) and Kaiser

Permanente Association of Southern California Optometrists[1] (KPASCO) by filing a Complaint for breach of contract and breach of duty of fair representation. (ECF No. 1). On June 28, 2018, Plaintiff filed the First Amended Complaint. (ECF No. 3). On September 28, 2018, Plaintiff filed the Motion for Summary Judgment. (ECF No. 18). On October 15, 2018, Defendants filed Opposition to Plaintiff's Motion for Summary Judgment. (ECF No. 19). On October 18, 2018, Plaintiff filed a Reply. (ECF No. 20).

## FACTUAL BACKGROUND

Plaintiff Dr. Brenda Jean Andersen-Swiderski is an optometrist employed by Kaiser in San Diego. (Declaration of Dr. Brenda Jean Andersen-Swiderski, ECF No. 18-2 ¶ 2). Plaintiff is, and, for all relevant periods, has been a member of KPASCO. *Id.* In November of 2016, Plaintiff was diagnosed with breast cancer and was on disability leave for a period in 2017. *Id.* ¶ 3. In January 2017, Plaintiff began receiving payments from Kaiser for the contractually provided salary continuance benefit (SCB). *Id.* ¶ 4. At the same time, Plaintiff also applied for state disability insurance (SDI) and received state disability insurance payments. *Id.* ¶ 3.

Added together, the SDI and SCB payments Plaintiff received equaled sixty percent of Plaintiff's pre-disability salary. *Id.* ¶¶ 19–20. Sections 2051–2058 of the Collective Bargaining Agreement (CBA) between Kaiser and KPASCO describe Kaiser's disability benefit regime:

2051  Short–Term Disability (STD) Insurance

2052  Active Optometrists regularly scheduled to work thirty- two (32) or more hours per week have the option to purchase short- term Disability (STD) insurance. Benefits are payable beginning on the first (1st) day of hospitalization or on the eighth (8th) consecutive day of illness or injury or upon exhaustion of ESL hours, whichever is later. This coverage provides at least fifty percent (50%) of the Optometrist's base salary, or up to sixty percent (60)% of the base salary if combined with

---

[1] In the Complaint, Plaintiff erroneously names the Kaiser Permanente Association of Southern California Optometrists as the Kaiser Permanente Southern California Optometric Association.

other disability income such as State Disability Insurance (SDI), Workers' Compensation and/or Social Security. Disability benefits may be paid for a maximum of three (3) years from the date of disability with continued physician certification. Disability benefits will cease earlier if the Optometrist is no longer disabled, or dies. The Optometrist must pay a monthly premium for this benefit.

2053 Salary Continuance

2054 Each Optometrist regularly scheduled to work thirty- two (32) or more hours per week is automatically eligible for the Salary Continuance (SC) plan after two (2) years of employment. This benefit is Company- paid.

2055 In the event of a disability, in instances where the Optometrist has no ESL hours or does not elect ETO hours, the Salary Continuance benefit will bridge the Optometrist's income with a total of 50% of his/her base salary for up to six (6) months from the date of disability or until the Optometrist is eligible for Long- Term Disability, whichever is sooner. In order to receive Salary Continuance benefits, the Optometrist must be eligible for SDI or Workers' Compensation.

2056 Long- Term Disability (LTD)

2057 An Optometrist regularly scheduled to work thirty- two (32) or more hours per week and has two (2) years of employment, is automatically covered by the Company- paid Long Term Disability (LTD) benefits. LTD provides monthly income payments if an Optometrist becomes disabled and cannot earn more than 80% of his/her pre- disability salary.

2058 Benefits are payable after six (6) months of disability or when an Optometrist exhausts all hours in his/her ESL Bank and uses any immediately elected ETO hours, whichever is later. This benefit provides at least fifty percent (50%) of an Optometrist's base salary or up to sixty percent (60%) if integrated with other disability income such as State Disability, Worker's Compensation and/or Social Security, or up to 100% of the Optometrist's pre- disability base salary with offsets from other income, during the first (1st) twenty- four (24) months of disability if participating in an approved rehabilitation/return to work incentive plan. Further incentives are provided after the first (1st) twenty- four (24) months, if applicable. Benefits are paid on a monthly basis according to the following table . . . .

(CBA, ECF No. 18-8 at 47). Plaintiff states that had her salary continuance benefit been paid pursuant to the text of the SCB provision at 50 percent of her pre-disability salary, without consideration of SDI benefits she was receiving, she would have received an additional $18,355.22 in SCB. (Andersen-Swiderski Decl., ECF No. 18-2 ¶ 19).

On May 10, 2017, Plaintiff sent an email to KPASCO informing KPASCO of her intent to file a grievance regarding her salary continuance benefits. (ECF No. 15-13). On May 15, 2017, Dr. Marsha Vinson, a KPASCO "contract specialist," informed Plaintiff that she had discussed Plaintiff's interpretation of the SCB language from the CBA with "members of the [KPASCO] leadership," ECF No. 15-15 at 1, and "that the benefit was properly being paid by Kaiser, at 60% of pre-disability Salary after integrations with SDI," Andersen-Swiderski Decl., ECF No. 18-2 ¶ 12. On July 10, 2017, Plaintiff received an email from Dr. Mary Cavanaugh, Vice President of KPASCO, stating that "the fact that salary continuance does not specifically state 'must' be integrated with other plans were merely an oversight relative to inexperience in writing a new contract." (ECF No. 15-18). Dr. Cavanaugh then informed Plaintiff that "[KPASCO] will update and clarify [the] language next year during local bargaining" but KPASCO's interpretation of the CBA was that SDI and SCB payments are integrated. *Id.* With regard to the July 10, 2017 email, Dr. Cavanaugh states in her deposition that:

> In my email I explained that the language was not as clear as it could be to evidence the parties' intent. I did not mean that the parties made a mistake in drafting the language. It has never been communicated to me that there was a mistake by either party in drafting the language of the Salary Continuance section of the KPASCO CBA.

(Cavanaugh Decl., ECF No. 19-4 ¶ 11). On July 19, 2017, Plaintiff emailed Dr. Cavanaugh and Bill Rouse, Executive Director of KPASCO, again seeking clarification of the CBA's language. On July 25, 2017, Bill Rouse responded to Plaintiff, stating that "the benefit is paid at either 50% or 60% when integrated with either SDI or Workers Compensation for up to a six month period." (ECF No. 19-5 at 8). Bill Rouse states in his declaration that "To my knowledge the Salary Continuance benefit has always been paid to Kaiser

employees either at 50% of the employees' base salary when not integrated, or at 60% if integrated with SDI or workers compensation." (Rouse Decl., ECF No. 19-5 ¶ 11). Rouse states that he is "not aware of the Salary Continuance benefit ever being applied in the manner Dr. Andersen would like the benefit applied" and "[t]he parties did not make a mistake in drafting the language of the CBA, both parties understood Salary Continuance benefit would be paid in the same manner and with the same restrictions as the short-term disability plan and the long-term disability plan." *Id.* ¶¶ 14, 17.

The CBA provides a three-step grievance procedure for resolving disputes. It states:

1004 First Step

1005 An Optometrist who believes a grievance or complaint exists will discuss such matter with the immediate supervisor, with or without an Association Representative present, as the Optometrist may elect. In the event the dispute remains unresolved, the Optometrist may submit a grievance in writing within thirty (30) calendar days after the Optometrist had knowledge, or should have had knowledge, of the event which caused the grievance or complaint. The written grievance shall state the facts and the requested remedy. It is the intent that every reasonable effort be made between the parties to resolve differences.

(ECF No. 18-8 at 13). A Step One conference involving Plaintiff and Kaiser was scheduled for December 14, 2017. Before the December 14, 2017 Step One conference, Plaintiff requested that Dr. Kusay Arabo, a KPASCO representative, attend Plaintiff's Step One conference. (Andersen-Swiderski Decl., ECF No. 18-2 ¶ 7). On December 7, 2017, Dr. Kusay Arabo informed Plaintiff that he could not attend Plaintiff's Step One conference. (ECF No. 18-9). Dr. Cavanaugh states that Dr. Kusay Arabo did not attend the Step One conference because "in or around the beginning of December 2017 . . . I told [Dr. Kusay Arabo] that [Plaintiff's] interpretation disagreed with management but that we agreed with management's interpretation of the Salary Continuance benefit. I told him that the Union did not want him to attend the meeting because the union had not filed a grievance on her behalf and could not support her position." (Cavanaugh Decl., ECF No. 19-4 ¶ 14).

On December 14, 2017, Plaintiff and Dr. Berner held a Step One conference at Kaiser's offices in San Diego. (Andersen-Swiderski Decl., ECF No. 18-2 ¶ 6). On January 5, 2018 Dr. Berner informed Plaintiff in a written decision that Kaiser had formally denied her grievance. (ECF No. 18-10).

On June 11, 2018, Plaintiff initiated this action by filing a Complaint against Defendant Kaiser for breach of contract and Defendant KPASCO for breach of duty of fair representation. (ECF No. 1). Plaintiff seeks $18,355.22 in damages,[2] Andersen-Swiderski Decl., ECF No. 18-2 ¶ 19, and $7,375.00 in filing and attorney's fees, ECF No. 18-3.

## LEGAL STANDARD

A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. Fed. R. Civ. P. 56(a). A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id.* A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). The burden then shifts to the opposing party to provide admissible evidence showing that summary judgment is not appropriate. *See Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 322, 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson*, 477 U.S. at 255.

---

[2] The FAC requests $21,178 in damages (ECF No. 3 ¶ 32), however Plaintiff states in her declaration that this number was arrived at erroneously and the correct figure is $18,355.22. (Andersen-Swiderski Decl., ECF No. 18-2 ¶ 19).

# ANALYSIS

## I. Statute of Limitations Defense

### a. Contentions

Plaintiff initiated this action on June 11, 2018. (ECF No. 1). Defendants contend that Plaintiff's action is "untimely and should be dismissed" because Plaintiff did not file this action within six months of the date "the Union refused to file a grievance—in July 2017 . . . ." (ECF No. 19 at 5). Plaintiff contends that the six-month statute of limitations clock did not start ticking until Plaintiff's grievance was "formally" denied by Kaiser on January 5, 2018 following Plaintiff's Step One conference. Plaintiff contends that she was contractually required to participate in a Step One conference, and had she not, "her complaint would be dismissed for failure of exhaustion of contractual remedies." (ECF No. 20 at 10).

### b. Legal Standard

Hybrid suits like the one here involve two separate but interdependent actions. "To prevail against either the company or the Union . . . [employee-plaintiff] must not only show that their discharge [or adverse employment action] was contrary to the [labor] contract but must also carry the burden of demonstrating a breach of duty by the Union." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983) (quotations and citation omitted). A hybrid Section 301 claim is subject to a six-month statute of limitations. *See West v. Conrail*, 481 U.S. 35, 37–38 (1987). The limitations period "begins to run when an employee knows or should know of the alleged breach of duty of fair representation by a union." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986).

The six-month limitation period on a duty of fair representation claim "is tolled while good faith attempts are made to resolve that claim through grievance procedures." *Id.* at 1510. The Ninth Circuit explained that "[a]n employee should not be penalized for seeking to resolve [her] dispute through the grievance process before filing a suit in federal

7

court. Such a . . . . rule would encourage the premature filing of duty of fair representation suits in lieu of resort to non-judicial grievance measures." *Id.*

### c. Analysis

Plaintiff attempted to resolve her dispute with Kaiser through a Step One conference pursuant to the grievance procedures outlined in the CBA. *See* ECF No. 18-8 at 13 ("First Step" grievance description). There is a dispute between the parties as to whether Plaintiff was required to file a Step One grievance with Kaiser after being informed by Dr. Cavanaugh, Dr. Vinson, and Mr. Rouse of KPASCO's interpretation of the SCB benefits language before filing this suit,[3] but the Court finds that the resolution of this dispute is immaterial. Plaintiff pursued her claim in good faith with Kaiser through the December 14, 2017 Step One conference and until receiving Kaiser's January 5, 2018 letter formally denying her claim. Plaintiff would not have sought judicial remedies had Kaiser decided after the December 14, 2017 Step One conference that Plaintiff's interpretation of the SCB on the CBA was meritorious. A ruling that found Plaintiff's claim barred by the statute of limitations here would "penalize[] [Plaintiff] for seeking to resolve [her] dispute through the grievance process before filing a suit in federal court" and "would undercut the national policy favoring nonjudicial resolution of labor disputes." *Galindo*, 793 F.2d at 1510 (quoting *Adkins v. lnt'l Union of Elec. Workers*, 769 F.2d 330, 336 (6th Cir. 1985)). The Court finds that tolling is appropriate here. Plaintiff's claim is not barred by the six-month statute of limitations.

## II. Breach of CBA Claim Against Kaiser

### a. Contentions

---

[3] Plaintiff contends that in order to maintain a claim against Kaiser, she was required to exhaust her administrative remedies—including a Step One conference—before filing this suit. (ECF No. 20 at 10). Defendant contends that "Plaintiff here was not required to submit a grievance with [Kaiser] on her own behalf or obtain a written decision from [Kaiser] before filing a civil complaint. Plaintiff was indeed not required to pursue any formal or required union procedures because her claims were no longer being pursued by the Union as mandated by the CBA." (ECF No. 19 at 16).

8

Plaintiff contends that Kaiser breached the CBA when Kaiser integrated her pay with SDI benefits at sixty percent of her pre-disability salary. (ECF No. 3 ¶¶ 31–31). Plaintiff contends that "the CBA between KAISER and KPASCO, unequivocally provides that the [SCB] is paid at 50% of base salary. No mention is made of any limitation based on integration with SDI. The only requirement is that an employee be eligible for SDI." *Id.* ¶ 31.

Defendants contend that "the [SCB is] paid with integration, and that it has always been paid with integration." (ECF No. 19 at 10). Defendants maintain that "[t]here was no mistake" in drafting the SCB provisions of the CBA at issue, ECF No. 19-1 at 3, and contend that summary judgment must be denied because there is "a clear factual dispute as to the meaning of the salary continuance benefits." (ECF No. 19 at 10).

**b. Legal Standard**

Summary judgment is appropriate in contract cases only if the contract provision or the contract in question is unambiguous. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 990 (9th Cir. 2006) (per curiam). If a contract term is ambiguous, it would create a genuine issue of material fact, thereby precluding summary judgment. *San Diego Gas & Elec. Co. v. Canadian Hunter Marketing Ltd.*, 132 F.3d 1303, 1307 (9th Cir. 1997). The determination as to whether a contract is or is not ambiguous is a question of law for the court. *Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995). A contract or a provision of a contract is ambiguous if it is reasonably susceptible to more than one interpretation or construction. *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 619 (9th Cir. 1981).

Collective Bargaining Agreements are interpreted according to "ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *M & G Polymers, USA v. Tackett*, 135 S. Ct. 926, 933 (2015). "[T]he fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." *Miller*, 454 F.3d at 989 (quoting *U.S. Cellular Invest. Co. of Los Angeles v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002)). In California, courts look first and foremost to the contract's language, which controls if "clear and

explicit," provided it "does not involve an absurdity." Cal. Civ. Code § 1638. "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ." *Id.* § 1639. "When, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded." *Id.* § 1640.

### c. Analysis

With regard to SCB, the CBA states:

> In the event of a disability, in instances where the Optometrist has no ESL hours or does not elect ETO hours, the Salary Continuance benefit will bridge the Optometrist's income with a total of 50% of his/her base salary for up to six (6) months from the date of disability or until the Optometrist is eligible for Long- Term Disability, whichever is sooner. In order to receive Salary Continuance benefits, the Optometrist must be eligible for SDI or Workers' Compensation.

(CBA, ECF No. 18-8 at 47). The CBA does not say that SCB is to be integrated with SDI payments at sixty percent of pre-disability salary. It says "the Salary Continuance benefit will bridge the Optometrist's income with a total of 50% of his/her base salary . . . ." *Id.* The provision is not ambiguous. Defendants do not contend that the CBA fails to mention integration with SDI payments in the SCB provision because of fraud, mistake, or accident. *See* ECF No. 19-1 at 3 ("There was no mistake [in the CBA] about which to inform Union membership.").

Moreover, the context of the SCB provision makes clear that the drafters of the CBA were aware of language required to integrate SCB with SDI payments at sixty percent of base salary. The provision immediately above SCB, which describes Short–Term Disability Insurance benefits, states "[t]his coverage provides at least fifty percent (50%) of the Optometrist's base salary, or up to sixty percent (60)% of the base salary if combined with other disability income such as State Disability Insurance (SDI), Workers' Compensation and/or Social Security." *Id.* The provision immediately below SCB, which describes Long–Term Disability Insurance benefits, states "[t]his benefit provides at least fifty percent (50%) of an Optometrist's base salary or up to sixty percent (60%) if

integrated with other disability income such as State Disability, Worker's Compensation and/or Social Security . . . ." *Id.* Defendants state that other employees received SCB integrated at sixty percent with SDI payments, however, under California contract law, "extrinsic evidence is not admissible to add to, detract from, or vary the terms of a written contract . . . ." *Pac. Gas & Elec. Co. v. G. W. Thomas Drayage & Rigging Co.*, 442 P.2d 641, 645 (Cal. 1968). The Court finds that Kaiser breached the unambiguous language of the CBA's SCB provision when it failed to provide Plaintiff with "the Salary Continuance benefit . . . [at] a total of 50% of his/her base salary . . . ." (CBA, ECF No. 18-8 at 47).

### III. Breach of Duty of Fair Representation Claim

#### a. Contentions

Plaintiff contends that KPASCO breached the Union's duty of fair representation of Plaintiff when KPASCO "acted in an arbitrary manner in denying [Plaintiff's] claim based on contractual language that KPASCO's Vice President conceded was not actually in the contract." (ECF No. 18-1 at 12). Plaintiff asserts that "KPASCO'[s] investigation into this matter showed a complete lack of regard for the written language of the CBA plainly providing the Salary Continuance benefit." *Id.* at 13. Plaintiff makes no allegation that the Union discriminated against her or acted in subjective bad faith.[4] *Id.* at 12.

Defendant KPASCO contends that KPASCO did not breach its duty of fair representation to Plaintiff because KPASCO "appropriately investigated her potential grievance" before declining to file on her behalf, and "acted in good faith." (ECF No. 19 at 18–19). KPASCO asserts that "the Union is not aware of the benefit ever being applied in the manner Plaintiff argues is the proper interpretation of the CBA" and KPASCO contends that its actions were not arbitrary because KPASCO "had a rational basis in refusing to file a grievance on Plaintiffs behalf because [KPASCO] and [Kaiser] both share

---

[4] Plaintiff separately contends KPASCO breached their duty of fair representation when KPASCO failed to send a representative to Plaintiff's Step One conference. (ECF No. 18-1 at 28). The Court does not reach this question.

the same understanding as to how the salary continuance benefits should be paid." (ECF No. 19 at 18–20).

### b. Legal Standard

A union breaches its duty of fair representation when its "conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171,190 (1967); *see also Air Line Pilots Ass'n. Int'l v. O'Neill*, 499 U.S. 65, 67, (1991). Conduct can be classified as arbitrary "only when it is irrational, when it is without a rational basis or explanation." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998). For example, a union acts "arbitrarily" when it simply ignores a meritorious grievance or handles it in a perfunctory manner. *Vaca*, 386 U.S. at 191. This deferential standard for arbitrary conduct "gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *Id.* at 45–46. With respect to interpreting CBA provisions, the Ninth Circuit has stated that,

> [A] union's conduct may not be deemed arbitrary simply because of an error in evaluating the merits of a grievance, in interpreting particular provisions of a collective bargaining agreement, or in presenting the grievance at an arbitration hearing. In short, we do not attempt to second-guess a union's judgment when a good faith, non-discriminatory judgment has in fact been made. It is for the union, not the courts, to decide whether and in what manner a particular grievance should be pursued."

*Peterson v. Kennedy*, 771 F.2d 1244, 1254 (9th Cir. 1985) (internal citation omitted). The deference is not unlimited, however. A court may decline to give a union the deference owed to an exercise of judgment where union actions or inactions are "so far outside a wide range of reasonableness that [they are] wholly irrational or arbitrary." *O'Neill*, 499 U.S. at 78; *see also Peters v. Burlington Northern R. Co.*, 931 F.2d 534, 540 (9th Cir. 1990) ("[I]t makes little sense to allow a union to hide behind the mantle of 'judgment' and 'discretion' when the evidence suggests that it actually exercised neither.").

### c. Analysis

In this case, KPASCO has provided evidence that Dr. Vinson, Dr. Cavanaugh, and Mr. Rouse consulted with each other and others before rendering a decision on whether or

not to file a grievance on Plaintiff's behalf. KPASCO has provided Mr. Rouse's statement that the SCB "has always been paid to Kaiser employees either at 50% of the employees' base salary when not integrated, or at 60% if integrated with SDI or workers compensation." (Rouse Decl., ECF No. 19-5 ¶ 11). KPASCO has not, however, provided any basis in the text of the CBA that supports KPASCO's position. *See Starla Rollins v. Cmty. Hosp. of San Bernardino*, 839 F.3d 1181, 1187 (9th Cir. 2016) ("[W]hen a grievance is important and meritorious a union must provide a more substantial reason for abandoning it.") (internal quotations and citation omitted); *see also Peters*, 931 F.2d at 540 (noting that, when evaluating whether a union acted arbitrarily, a court must "evaluate the strength of the employee's grievance").

While unions are afforded wide discretion in evaluating the subjective merits of an employee's proffered grievance, and ordinarily will not be second-guessed when "interpreting particular provisions of a collective bargaining agreement" *Peterson*, 771 F.2d at 1254, the provision is unambiguous. The CBA does not say anything about SCB being integrated with SDI payments. KPASCO states that "[KPASCO] and [Kaiser] both share the same understanding as to how the salary continuance benefits should be paid," ECF No. 19 at 18–20, but KPASCO and Kaiser cannot ignore the plain, unambiguous text of the CBA. *See, e.g.*, *Rupcich v. United Food & Commercial Workers Int'l Union*, 833 F.3d 847, 855 (7th Cir. 2016) ("That discretion, however, does not empower [union] to ignore the CBA's plain text where doing so alters an employee's fundamental rights . . . through a side arrangement or agreement."). The Court finds that KPASCO's decision not to file a grievance on Plaintiff's behalf in the face of the unambiguous language of the CBA was arbitrary, and a breach of KPASCO's duty of fair representation to Plaintiff.

## IV. Attorney's Fees

In a "hybrid section 301" action, the court may award reasonable attorney's fees to a prevailing plaintiff against the union, since "one of the principle elements of damages is the amount [plaintiff] was forced to expend in attorney fees to do that which the union was obligated but failed to do." *Zuniga v. United Can Co.*, 812 F.2d 443, 455 (9th Cir. 1987).

In this case, Plaintiff incurred $7,375.00 in filing and attorney's fees. (ECF No. 18-3). The Court has reviewed the time sheets, hourly rate, and CV provided by Plaintiff's counsel and finds them to be reasonable. The Court awards Plaintiff $7,375.00 in filing and attorney's fees, assessed against Defendant KPASCO.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Plaintiff Dr. Brenda Jean Andersen-Swiderski (ECF No. 18) is GRANTED. Plaintiff is awarded $18,355.22 in damages for breach of contract, to be assessed against Kaiser. Plaintiff is awarded $7,375.00 in damages for breach of the duty of fair representation, to be assessed against KPASCO. IT IS FURTHER ORDERED that no later than fourteen (14) days from the date of this Order, Plaintiff shall submit a proposed judgment for the Court's approval.

Dated: January 10, 2019

Hon. William Q. Hayes
United States District Court